**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **ANNE ARMSTRONG, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **vs.** ) | **Case No. 4:15cv1006 TCM** |
| ) | |
| **CURVES INTERNATIONAL, INC.,** ) | |
| **CURVES INTERNATIONAL** ) | |
| **HOLDINGS, INC., and** ) | |
| **HOWARD GARY HEAVIN,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

This 165-count mass action[1] with 111 named plaintiffs is before the Court[2] on an

opposed motion to dismiss by Curves International, Inc.; Curves International Holdings, Inc.;

and Howard Gary Heavin (Defendants) and a notice filed by Plaintiffs voluntarily dismissing

without prejudice 96 of the counts. The action was filed in state court on June 1, 2015, and

timely removed to federal court

## Background

At issue are 33 groups of franchises. These franchises are owned by various

individuals and entities named as plaintiffs. The franchises are, or were, all owned and

---

[1]A "mass action" is "'any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." **Atwell v. Boston Scientific Corp.**, 740 F.3d 1160, 1161 (8th Cir. 2013) (quoting 28 U.S.C. § 1332(d)(11)(B)(i)).

[2]The case is before the undersigned United States Magistrate Judge by written consent of the parties. See 28 U.S.C. § 636(c).

operated pursuant to a franchise agreement with defendant Curves, International, Inc. (Curves). Plaintiffs allege that Curves; its owner, Curves International Holdings, Inc.; and its former president and chairman of the board of directors, Howard Gary Heavin, have violated this agreement. The first of three groups of violations includes knowingly making misrepresentations relevant to the financial prospects of a franchise. Plaintiffs allege they relied on these misrepresentations when deciding to purchase or renew a franchise. Curves misrepresented the initial investment required by sometimes leading Plaintiffs to believe that they needed only three months' operating expenses before they would break even. And, Curves did not, as represented, assist in selecting, negotiating, or developing the site and location of a franchise. Nor did they, as represented, always assist in grand openings or in the proper training beforehand. Curves also over-saturated the market while misrepresenting to Plaintiffs that they had researched the relevant demographics and would not grant a franchise unless the area at issue could support such. These misrepresentations were made in required Franchise Disclosure Documents (FDD), on the Curves' website, in magazine articles, newspaper ads, and in other forms and media. (Compl. ¶¶ 107-15, 118-24.) In one 2003 magazine article, Heavin predicted that the domestic Curves franchises would be sold out within a year; however, franchises continued to be sold. (Id. ¶ 128.) Also, he disclosed at the 2006 Curves Convention that "many clubs were going to have to close due to the overbuilt system." (Id. ¶ 125.)

The second group of violations consists of unanticipated various demands made by Curves after the franchises were operating and additional payments were required. The

payments were made to vendors, the majority of which were Curves' subsidiaries "and/or gave kickbacks to Curves." (Id. ¶ 117.) Sixteen of these demands are listed. One of these sixteen occurred in 2001, i.e., Curves required its franchisees to purchase Curves t-shirts that could only be given away, not sold. (Id. ¶ 117(a)). Two occurred in 2003; Curves required its franchisees to buy Heavin's book and to buy bags to be given to new members. (Id. ¶ 117(b), (c)). One – requiring franchisees to pay "Diane Magazine"[3] – occurred in 2004. (Id. ¶ 117(d)). In 2008, Curves introduced a new system which led to additional requirements of franchisees. (Id. ¶ 117(e)). Two other new systems or programs were introduced in 2010, each resulting in additional requirements. (Id. ¶ 117(f), (g)). In 2011, Curves required franchisees to purchase new material and to implement the new system introduced the year before. (Id. ¶ 117(h), (I)). In 2012, franchisees were again required to purchase new material and were also required to purchase tool kits to give away and "to implement new paint colors." (Id. ¶ 117(j)-(l)). Four additional demands were made of franchisees in 2013: purchases must be made (I) of meal and snack bars with a display stand; (ii) of clothing bundles and a display stand; (iii) of new equipment; and (iv) of Curves and Curves Complete vinyl decals. (Id. ¶ 117(m)-(p)). Also included in this group is Curves' requirement that franchisees purchase their equipment from Curves, charging excessive shipping fees and misrepresenting that their prices were less due to Curves' superior buying power. No time frame is identified for this last type of demand.

---

[3]The magazine is presumably the creation of Heavin's wife, Diane Heavin. (See Compl. ¶ 77.)

The third group consists of obligations anticipated by the franchise agreements but not performed by Curves. For example, these obligations included Curves' (I) "periodic review of franchisee's sales, promotional efforts, and financial status with suggestions as to any improvements"; (ii) "conduct[ing] merchandising, marketing and advertising research, . . . [and] communicat[ing] new developments, technique and improvements to the system"; and (iii) advertising nationally and regionally. (Id. ¶ 144(c), (d), (f).)

Each of the eighty-three groups of franchisees named as Plaintiffs allege that the foregoing actions of Defendants are a breach of contract; a violation of the Texas Business Opportunity Act, Tex. Bus. & Com. Code § 51.001-302 (TBOA); and a violation of the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code, § 17.41-17.63 (DTPA).

Defendants argue that the claims must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because they are filed after the applicable statute of limitations has run or, if not, either (a) dismissed because they were not filed in Texas as required by the franchise agreement or (b) transferred to the United States District Court for the Western District of Texas. The relevant franchise agreement provisions read as follows:

Governing Law, Forum Selection and Compliance.

1. . . . The parties agree that [the franchise agreement] will be deemed made and entered into in the State of Texas and will be governed and construed under and in accordance with the laws of the State of Texas.

2. Franchisee and Curves acknowledge and agree that the U.S. District Court for the Western District of Texas or the judicial district courts (or successor) in and for McLeannan County, Texas, will be the venue and exclusive proper forum in which to adjudicate any case or controversy arising either, directly or indirectly, under or in connection with this Agreement or the relationship between Curves and Franchisee except to the extent otherwise provided in this

Agreement and the parties further agree that, in the event of litigation arising out of and in connection with this Agreement or the relationship between Curves and Franchisee in these courts, they will not contest or challenge the jurisdiction or venue of these courts.

(Mot. Ex. A at 41, ECF No. 12-1.)

Plaintiffs have filed a notice dismissing 96 of their 165 counts without prejudice. See Fed.R.Civ.P. 41(a)(1)(A)(I).[4] The counts at issue are allegations of violations of the two Texas statutes and involve franchisee agreements signed or renewed before June 1, 2013.

### Discussion

When ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must take as true the alleged facts and determine whether they are sufficient to raise more than a speculative right to relief. **Bell Atl. Corp. v. Twombly**, 550 U.S. 544, 555-56 (2007). "'[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" **Smithrud v. City of St. Paul**, 746 F.3d 391, 397(8th Cir. 2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). If the claims are only conceivable, not plausible, the complaint must be dismissed. **Twombly**, 550 U.S. at 570; accord **Iqbal**, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for

---

[4]Plaintiffs titled their pleading a "Notice of Partial Dismissal" and cited Rule 41(a)(1)(A)(ii) as its basis. This provision allows a plaintiff to dismiss his or her cause of action without a court order by filing a stipulation of dismissal signed by all parties who have appeared. There is no such stipulation. Rule 41(a)(1)(A)*(I)* provides that a plaintiff may dismiss without court order an action by filing "a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment." Fed.R.Civ.P. 41(a)(1)(A)(I). "[A] motion to dismiss is not considered to be the equivalent of either an answer or a motion for summary judgment for purposes of rule 41(a)(1)(A)(I)." **Miller v. Wayne**, 2015 WL 2353021, *1 (D. Minn. May 15, 2015). Consequently, Plaintiffs may dismiss the 96 counts without leave of Court. To the extent that this notice may be construed as a motion, it will be granted.

the misconduct alleged." **Id.** at 678. The Court does not accept as true any allegation that is a legal conclusion. **Id.** at 668.

Additionally, when ruling on a motion to dismiss, the Court may consider "'documents incorporated into the complaint by reference[.]'" **Podraza v. Whiting**, 790 F.3d 828, 837 (8th Cir. 2015) (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)). Accord **Greenman v. Jessen**, 787 F.3d 882, 887 (8th Cir. 2015) (holding that courts may consider "materials that are necessarily embraced by the pleadings" when ruling on a 12(b)(6) motion to dismiss) (internal quotations omitted). Consequently, the Court will consider the franchise agreement (the Agreement) attached as an exhibit to Defendants' memorandum in support of their motion to dismiss.[5] See **Yumilicious Franchise, LLC v. Barrie**, 2014 WL 4055475, *3 (N.D. Tex. Aug. 14, 2014) (considering franchising agreement attached to counter-defendant's motion to dismiss when ruling on motion because it was referred to in the counterclaimants's pleadings and was central to their counterclaims).

A. Breach of Contract Claims. Each of the thirty-three groups of franchisees assert a claim for breach of contract. To prove such a claim under Texas law,[6] Plaintiffs must establish "(1) the existence of a valid contract; (2) performance or tendered performance by [Plaintiffs]; (3) breach of the contract by [Defendants]; and (4) resulting damages to [Plaintiffs]." **Chance v. Elliot & Lillian, LLC**, 462 S.W.3d 176, 283 (Tex. Ct. App. 2015).

---

[5]The Court notes that Plaintiffs do not contest the accuracy of the Agreement or contend that they had signed a different version.

[6]Plaintiffs do not dispute that Texas law governs the resolution of their breach of contract claims. Indeed, they cite Texas cases.

"A party asserting a breach of contract claim must sue no later than four years after the claim accrues." **Stine v. Stewart**, 80 S.W.3d 586, 592 (Tex. 2002) (citing Tex. Civ. Prac. & Rem. Code, § 16.051) (per curiam). "It is well-settled law that a breach of contract claim accrues when the contract is breached," **id.**, "or when the claimant has notice of facts sufficient to place him on notice of the breach," **Davis Apparel v. Gale-Sobel**, 117 S.W.3d 15, 18 (Tex. Ct. App. 2003). A contract is breached "'when a party fails to perform an act that it has contractually promised to perform." **Greene v. Farmers Ins. Exch.**, 446 S.W.3d 761, 765 (Tex. 2014). Accord **Capstone Healthcare Equip. Servs. Inc. v. Quality Home Health Care, Inc.**, 295 S.W.3d 696, 699 (Tex. Ct. App. 2009) ("A breach of contract occurs when a party fails or refuses to do something he has promised to do.").

If the facts are undisputed, a defendant may establish that a "plaintiff's claim is barred by the statute of limitations as a matter of law." **Intermedics, Inc. v. Grady**, 683 S.W.2d 842, 845 (Tex. Ct. App. 1984). If, however, "reasonable minds may differ as to the inferences to be drawn from the evidence, it is incumbent upon the party asserting limitations to secure findings sustaining the plea of limitations." **Id.**

Defendants argue that the allegations of the complaint make it clear that the statute of limitations began to run on Plaintiffs' breach of contract claims when the original Agreements were signed or shortly thereafter. Consequently, the sixty-four Agreements that were signed on or before May 31, 2011, are untimely. The allegations cited by Defendants are those of not providing opening assistance and training and oversaturating the market. (See Defs.' Mem. at 9-10.) This characterization oversimplifies Plaintiffs' allegations.

As noted above, Plaintiffs' claims fall into one of three groups. The first group, hereinafter referred to as Group A, includes allegations of promises broken before or at the opening of a franchise. The breaches that occurred after the opening of a franchise are either (1) failure to provide the promised training for up to four days after the opening or (2) misrepresentations that the franchisees would break even within three months after the opening.

Plaintiffs argue that breaches occurring on or before May 31, 2011, are not barred by the statute of limitations because the statute does not run until the Agreement is fully performed.[7] This assumes the Agreement was a continuing contract. See **Davis Apparel**, 117 S.W.3d at 18 ("If the parties' agreement contemplates a continuing contract for performance, the limitations period does not usually commence until the contract is fully performed."). "In a continuing contract, the contemplated performance and payment is divided into several parts or, where the work is continuous and indivisible, the payment for work is made in installments as the work is completed." **Hubble v. Lone Star Contracting Corp.**, 883 S.W.2d 379, 381 (Tex. Ct. App. 1994). The continuing contract exception has been applied to installment contracts, agreements to pay commissions, lease payments, promissory note payments, see **Spin Doctor Golf, Inc. v. Paymentech, L.P.**, 296 S.W.3d 354, 362 (Tex. Ct. App. 2009), and construction contracts, see **Capstone Healthcare**

---

[7]The Court notes Plaintiffs do not argue that the discovery rule applies to their breach of contract claims. Given that the discovery rule applies only to those rare breach of contract claims where the breach is "inherently undiscoverable and objectively verifiable," **Via Net**, 211 S.W.3d at 315, any such argument would likely be unavailing.

**Equipment Servs.**, 295 S.W.3d at 700.  Each has in common an obligation payable in installments.  **Spin Doctor Golf, Inc.**, 296 S.W.3d at 362.

The complained-of breaches in the instant action are not of obligations not performed pursuant to a continuing contract.  They are instead of discrete misrepresentations, failures, or demands that allegedly caused Plaintiffs distinctive injuries.  The statute of limitations began to run on all but one of the claims in Group A four years after the franchise was opened.[8]  There is an exception.  Plaintiffs would not have known that Curves misrepresented the time by which their respective franchises would break even until three months after the franchise opened.

The second group, hereinafter referred to as Group B, are of seventeen additional demands placed on the franchisees that were allegedly not provided for in the Agreement. Sixteen of these demands were made in 2001, 2003, 2004, 2008, 2010, 2011, 2012, or 2013. A time frame for the seventeenth demand – that equipment be purchased through Curves – is not given.  All claims relating to demands made in 2001, 2003, 2004, 2008, and 2010 are time-barred.

The third group, hereinafter referred to as Group C, are of actions Curves allegedly promised to take and did not.  See **Intermedics, Inc.**, 683 S.W.2d at 845 ("A breach of contract occurs when a party fails or refuses to do something he has promised to do.").  No time frame for these alleged breaches is given.

---

[8]The Court is mindful that Plaintiffs' alleged violations include a misrepresentation that training would be provided for up to four days after a franchise opened.  None of the franchises opened or were renewed between May 27 and 31, 2011.

Mindful of the three groups of breach of contract claims, the Court turns to the claims of specific Plaintiffs.

1.   Anne Armstrong, Delbert Armstrong, and A2d Enterprises, LLC.   These franchisees allegedly executed a franchise agreement on January 30, 2013.  This is within four years of the breaches allegedly in Groups A and C.  The Group B claims of 2013 and of equipment purchases are relevant.

2.  Beverly Barcus, Kent Barcus, and BeverlyRuth, LLC.  These franchisees allegedly executed a franchise agreement on May 20, 2009.  The franchise at issue closed on or about December 15, 2012.

The statute of limitations on the claims in Group A, including the alleged misrepresentation about time by which a franchise would break even, would have run at the latest by August 20, 2009.  The only relevant, timely allegations in Group B are those relating to 2011, 2012, and the equipment demands.  Group C claims survive to the extent that they are of actions or omissions occurring between May 31, 2011, and December 15, 2012.

3.  Dolores Cooney, Christina Beidel, and Women's Fitness of Wausau, Inc.  Cooney executed a franchise agreement, one for a franchise in Wausau, Wisconsin, in July 1999 and assigned it to Women's Fitness in December 2002.  The agreement was renewed by Women's Fitness in July 2009 and again in September 2014.  Cooney executed another franchise agreement, one for a franchise in Boulder City, Nevada, in December 2001 and assigned it to Women's Fitness in December 2002.  It closed in May 2012.  A third franchise agreement, one for a franchise in Las Vegas, was executed by Cooney in November 2002 and assigned

to Women's Fitness the next month.  Women's Fitness sold it in October 2005.  A fourth franchise agreement, one for a franchise in Marathon, Wisconsin, was executed by Cooney in 2003 and later assigned to Women's Fitness.

Any franchise agreement executed by Cooney was assigned to Women's Fitness at least four years before this action was filed.  Her claims and those of Beidel, identified only as Cooney's partner, will be dismissed.

The breach of contract claims of Women's Fitness for the Wausau location will not be dismissed.

The breach of contract claims of Women's Fitness for the Boulder City location will dismissed as to those in Group A.  The only relevant, timely allegations in Group B are those relating to 2011, January to May 2012, and the equipment demands.  Group C claims survive to the extent that they are of actions or omissions occurring between May 31, 2011, and May 2012.[9]

The breach of contract claims of Women's Fitness for the Las Vegas location are all time-barred and will be dismissed.

And, the breach of contract claims of Women's Fitness for the Marathon location will not be dismissed at this stage in the proceedings as there is no year for the assignment or any indication whether that franchise is an ongoing concern.

4.  Gail Berquist and GB Fitness, LLC.  Berquist executed a franchise agreement in January 2008 for a franchise located in Golden Gate Estates, Florida and later assigned the

---

[9]Unless otherwise noted, the Group C claims that survive do so only for the period between May 31, 2011, and when the franchise ceased operation.

agreement to GB Fitness. The franchise ceased operation in 2013. Berquist executed another franchise agreement in September 2009 for a Naples, Florida location and later assigned this agreement to GB Fitness. This franchise ceased operation in 2014.

All Group A claims are dismissed, as are the Group B claims for demands made prior to 2011. Group C claims survive.

5. Carla Birch and Garrison Payne. Birch executed a franchise agreement in December 2007.[10] In December 2014, the franchise closed. All Group A claims of Birch are dismissed, as are her Group B claims for demands made prior to 2011. Her Group C claims survive.

Although named as a plaintiff, there is no allegation connecting Payne to any of the claims. He will be dismissed.

6. Rachael Blackmore and One Candle, LLC. Blackmore executed a franchise agreement in February 2010 for a franchise located in Saline, Michigan. It is alleged both that she assigned this franchise to One Candle and that she sold the franchise in October 2013. One Candle executed a franchise agreement in November 2011 for a Holland, Michigan location; the franchise closed in April 2014.

All Group A claims of Blackmore are time-barred. Her Group B claims for demands allegedly made in 2011, 2012, and January to October 2013 and her equipment demands survive, as do her Group C claims.

---

[10]It is also alleged that she renewed the agreement the same month and year. The Court will not guess as to the correct month and year of renewal; therefore, any renewal will not be considered for statute of limitations purposes.

Candle One's Group A claims for the Holland franchise survive, as do its Group B claims for demands made in 2011, 2012, and 2013 and for equipment purchases. Its Group C claims survive.

7. Jacqueline Blanton and Phyllis Duhe. These two Plaintiffs executed a franchise agreement in October 2013. All Group A, Group B, and Group C claims survive.

8. Kerrie Chatelain and Hi Heels, LLC. Hi Heels executed a franchise agreement in March 2002; the franchise closed in March 2012. Chatelain executed a franchise agreement in March 2004; the franchise closed in 2014.

The Group A claims for both franchises are time-barred. For Hi Heels, the only relevant, timely allegations in Group B are those relating to 2011, January to March 2012, and the equipment demands. Its timely Group C claims survive. For Chatelain, all timely Group B and C claims survive.

9. Darlene Clary and Dar Jar, LLC. Clary executed a franchise agreement in January 2012 and later assigned it to Dar Jar. None of the Group A and Group C claims are time-barred. The only relevant, timely allegations in Group B are those relating to 2012, 2013, and the equipment demands.

10. Teresa Collier. Collier executed a franchise agreement in February 2004 for a Spartanburg, South Carolina franchise. It closed in December 2010. She signed another agreement in November 2004 for a second Spartanburg franchise. This closed in April 2014. She signed a third franchise agreement in April 2005 for a franchise in Duncan, South Carolina. This franchise also closed in April 2014.

The Group A claims of Collier for all three franchises are time-barred.  The Group B and C claims for the first franchise are also time-barred.  For the second and third franchises, the only relevant, timely allegations in Group B are those relating to 2011, 2012, 2013, and the equipment demands.  The timely Group C claims for the second and third franchises survive.

11.  Clesta Collins and Roger Collins.  The Collinses executed a franchise agreement in August 2004.  The franchise closed on January 28, 2013.  Their Group A claims are time-barred.  The only relevant, timely allegations in Group B are those relating to 2011, 2012, January 2013, and the equipment demands.  Group C claims survive.

12.  Zachary Collins and Tiffany Collins.  The Collinses executed a franchise agreement in January 2013.  The franchise has apparently not closed.  Their Group A, Group B claims for 2013 and equipment demands, and Group C claims survive.

13.  Denise Cooke, Alan Cooke, and Be Strong, LLC.  Denise Cooke executed a franchise agreement in June 2001.  Be Strong executed a franchise agreement in 2011.  Be Strong's franchise ceased operations in June 2014.  There is no indication as to the status of Denise Cooke's franchise.  There is also no allegation that Denise Strong assigned her franchise to Be Strong.

The Group A claims of Denise Cooke are time-barred, as are her Group B claims for demands prior to 2011.  Her Group C claims survive as noted above.  The claims of Be Strong survive.

14. Natalie Cooper-Berthe; Body Design, Inc.; Body Design DCI, Inc.; and Body Design 2, Inc. There are three franchises at issue for this group of franchisees. Each was originally executed by Cooper-Berthe and then assigned to a different corporation. The first was executed in 2002; assigned to Body Design, Inc., in January 2005; and ceased operations in December 2012. The second was executed in October 2003; assigned to Body Design DCI, Inc., in June 2005; and ceased operations in March 2011. The third was executed in October 2003; assigned to Body Design 2, Inc., in June 2005; and ceased operations in March 2011.

All claims of Cooper-Berthe and all Group A claims are time-barred. All Group B claims of Body Design, Inc., for demands prior to 2011 are time-barred. There can be no claims for demands made in 2013. The timely Group C claims of Body Design, Inc., survive. All claims of Body Design DCI, Inc., and of Body Design 2, Inc., are time-barred.

15. Lee Lynn Lifestyles, LLC, Carol Coy, and Jo Lynn Nelson. Lee Lynn Lifestyles executed a franchise agreement in June 2011 "by and through . . . Carol Coy and Jo Lynn Nelson." (Compl. ¶ 28.) This was for a franchise in Murray, Utah. Lee Lynn Lifestyles executed another franchise agreement in August 2011. This franchise, in Taylorsville, Utah, was given away in January 2015.

All Group A and C claims survive. The only applicable Group B claims are for the 2011, 2012, 2013, and equipment demands.

16. Amy Draper and AB Draper, LLC. Draper executed a franchise agreement in April 2010 and assigned it to AB Draper, LLC, in May 2010. The franchise ceased operations in January 2015.

All of Amy Draper's claims and all Group A claims are dismissed. Those Group B and Group C claims that arose from allegations of actions or omissions after May 31, 2011, survive.

17. Denise Edmiston. Edmiston executed a franchise agreement in January 2006 and renewed it in December 2010. There is no allegation that the franchise has ceased operation.

Her Group A claims are time-barred. Those of her Group B and Group C claims that are based on allegations of actions or omissions after May 31, 2011, survive.

18. Megan Edwards and Saintfield, LLC. Edwards executed a franchise agreement in February 2012 and assigned that agreement to Saintfield in April 2012. The franchise ceased operations in August 2014.

No claims are time-barred.

19. Susan Espy, Glenn Espy, and Gypse, LLC. Susan Espy executed a franchise agreement in May 2009 and assigned it to Gypse, LLC, two weeks later. The franchise ceased operation in May 2014.

All Group A claims are time-barred. All claims of Susan Espy and Glenn Espy are also time-barred. The Group B and Group C claims of Gypse, LLC, that arise from allegations of actions or omissions after May 31, 2011, and up to and including May 2014 survive.

20.  Executive Accounting & Tax Service, Ltd., and Maureen Flanigan Korzinski. Executive Accounting, by and through Korzinski, executed a franchise agreement in August 2010.  It ceased operations in February 2014.

All Group A claims are time-barred.  Group B and Group C claims arising from allegations of actions or omissions after May 31, 2011, and up to and including February 2014 survive.

21. Susan Fogg and Rivah Fit Corporation.  Fogg executed a franchise agreement in October 2009 and assigned it to Rivah Fit Corporation in January 2010.  The franchise ceased operations in October 2014.

All Group A claims and those of Susan Fogg are time-barred.  The Group B and Group C claims of  Rivah Fit that arise from allegations of actions or omissions after May 31, 2011, and up to and including October 2014 survive.

22.  K&M Fitness, LLC, Matthew Ford, and Kristen Stoddard.  K&M Fitness executed a franchise agreement by and through Ford and Stoddard in September 2011.  (Id. ¶ 34.)  This franchise is apparently still operational.

All claims survive.

23.  Diva Deb, Inc. and Debra Freedland.  Diva Deb executed a franchise agreement in November 2011 by and through Freedland.  This franchise ceased operation in February 2014.

All claims survive.

24. Cathy Frost and Frost Enterprises, Inc. Frost executed a franchise agreement in September 2001 for a franchise in East Hartford, Connecticut. She sold the franchise in 2008. She executed another franchise agreement in May 2002 for a franchise in Natick, Massachusetts. She sold this franchise in 2011. She executed a third franchise agreement in December 2006 for a franchise in Needham, Massachusetts. She sold the franchise in August 2013. She executed a fourth franchise agreement in October 2001 for a franchise in New London, Connecticut. This franchise was sold in August 2008. She executed a fifth franchise agreement in May 2001 for a franchise in Norwich, Connecticut. Acting as Frost Enterprises, Inc., she renewed this franchise in November 2012. The franchise ceased operations in December 2014.

All claims are time-barred as to the first, East Hartford and fourth, New London franchises. All Group A claims and the Group B claims for demands prior to 2011 are time-barred as to the second, Natick franchise. Group C claims are relevant only for those months in 2011 after May 31 when the franchise was operational. All Group A claims and the Group B claims prior to 2011 are time-barred as to the third, Needham franchise. The Group C claims survive. The Group A, B, and C claims survive as to the fifth franchise.

25. Jim Gasson, Jr. Gasson executed a franchise agreement in October 2002 for a franchise in Alexandria, Virginia. This franchise ceased operations in October 2012. He executed a second franchise agreement in April 2003 for a location in Annadale, Virginia. This franchise ceased operations in November 2013. He executed a third franchise agreement in September 2004 for another Annadale location. This franchise ceased

operations in March 2012. He executed a fourth franchise agreement in January 2004 for a another Alexandria location. This franchise ceased operations in April 2011.

All Group A claims are dismissed as time-barred. All claims relating to the fourth franchise are also dismissed as time-barred. The timely Group B and Group C survive for the first, second, and third franchises.

26. Ann Guzdial and John McIntosh. Guzdial and McIntosh executed a franchise agreement in June 2006. The franchise ceased operations in July 2011.

All Group A claims are dismissed. Only those Group B and C claims arising from actions or omissions occurring between May 31, 2011, and the date the franchise closed survive.

27. Deedra Haselhuhn and David Haselhuhn. The Haselhuhns executed a franchise agreement in June 2011. The franchise ceased operations in June 2014.

Their claims are not time-barred.

28. Surfside Fitness, LLC, John Heppe, and Kathleen Tomann-Heppe. Surfside executed a franchise agreement in August 2010 by and through Heppe and Tomann-Heppe. This franchise ceased operations in July 2014.

All Group A claims are time-barred. The Group B and C claims arising from actions or omissions occurring between May 31, 2011, and the date the franchise closed survive.

29. Dawn Hollenbeck and Jonathan Hollenbeck. The Hollenbecks executed a franchise agreement in March 2011. The franchise ceased operations in April 2013.

All Group A claims are time-barred with the exception of the claim relating to breaking even within three months. Group B and C claims arising from actions or omissions occurring between May 31, 2011, and the date the franchise closed survive.

30. Gilpin Avenue Fitness, Inc., Julianne Dugan, and Laura Johnson. Gilpin Avenue Fitness executed a franchise agreement in June 2011 by and through Dugan and Johnson. This franchise ceased operations in December 2011. Gilpin Avenue Fitness executed another franchise agreement in November 2011. This franchise is apparently still operating.

All claims survive.

31. Bonnilee Jones. Jones executed a franchise agreement in January 2012. The franchise ceased operations in July 2014.

All claims survive.

32. Spring Kamp and Spring Kamp, LLC. Kamp executed a franchise agreement in April 2012 and assigned it to Spring Kamp, LLC. The franchise ceased operations in May 2014.

All claims survive.

33. Ruth Kieffer. Kieffer executed a franchise agreement in August 2004 and renewed it in 2009. The franchise ceased operations in August 2012.

All Group A claims are time-barred. Group B and C claims arising from actions or omissions occurring between May 31, 2011, and the date the franchise closed survive.

34.  B'KLYN Hot Fitness, Inc., and Stacey Kopita.  B'KLYN executed a franchise agreement in August 2009 by and through Kopita.  The franchise ceased operations in March 2014.

All Group A claims are time-barred.  Group B and C claims arising from actions or omissions occurring between May 31, 2011, and the date the franchise closed survive.

35.  Kathleen Loeffler, Jaclynn Loeffler, and J&K Health, LLC.  The Loefflers executed a franchise agreement in August 2013 and assigned it to J&K Health in November 2013.  The franchise ceased operations in January 2015.

All claims survive.

36.  John Matusin.  Matusin executed a franchise agreement in August 2002 for a Center, Pennsylvania location; the franchise ceased operations in August 2012.  In June 2003, he executed a franchise agreement for a Hopewell Township, Pennsylvania location.  This franchise ceased operations in June 2013.

All Group A claims are dismissed as time-barred for both franchises.  Group B and C claims arising from actions or omissions occurring between May 31, 2011, and the date each franchise closed survive.

37.  Judith McCrary.  McCrary executed a franchise agreement in July 2010; the franchise ceased operations in October 2014.

Her Group A claims are dismissed as time-barred.  Group B and C claims arising from actions or omissions occurring between May 31, 2011, and the date the franchise closed survive.

38.  Beverly McDonald.  McDonald executed a franchise agreement in September 2012; the franchise ceased operations in September 2014.

All claims survive.

39.  Susan O'Donnell and SEO Group, LLC.  SEO Group executed a franchise agreement in July 2009 by and through O'Donnell for a franchise in Newton, Pennsylvania.  The franchise ceased operations in January 2011.  SEO executed a franchise agreement in September 2009 for a Langhorne, Pennsylvania location.  This franchise ceased operations in September 2014.

All claims relating to the Newton franchise and those of Susan O'Donnell are time-barred.  All Group A claims relating to the Langhorne franchise are time-barred.  Group B and C claims arising from actions or omissions occurring between May 31, 2011, and the date the Langhorne franchise closed survive.

40.  Ana Ogle.  Ogle executed a franchise agreement in April 2012.  The franchise ceased operations in December 2013.

All claims survive.

41.  Tricia Petrinovich and Stephen Petrinovich.  The Petrinoviches executed a franchise agreement in October 2003.  The franchise ceased operations in February 2013.

All Group A claims are time-barred.  Group B and C claims arising from actions or omissions occurring between May 31, 2011, and the date the franchise closed survive.

42. Catherine Pieratt and Fitness Queens, LLC. Pieratt executed a franchise agreement in September 2008 and renewed it in September 2013 under the name of Fitness Queens.

All Group A claims are time-barred. Group B and C claims of Pieratt arising from actions or omissions occurring between May 31, 2011, and the date the franchise was renewed survive. The Group B claims of Fitness Queens for 2013 and equipment demands survive, as do its timely Group C claims.

43. Steven Price, Helen Price, and SH Price, Inc. The Prices executed a franchise agreement in August 2011 and later assigned it to SH Price, Inc. The franchise ceased operations in July 2014.

All claims survive.

44. Keeping You Fit, Inc., and Shellene Ragan. Keeping You Fit, by and through Ragan, executed a franchise agreement in October 2010 for a Fargo, North Dakota franchise. This franchise ceased operations in June 2011. Keeping You Fit executed another franchise agreement in October 2010 for a franchise located in West Fargo. This franchise ceased operations in December 2011. A third franchise agreement was also executed in October 2010. This was for the south area of Fargo. This franchise is apparently still operating.

All Group A claims are time-barred. For the first and second franchises, the Group B and C claims arising from actions or omissions occurring between May 31, 2011, and the date each franchise closed survive. For the third franchise, the Group B 2011, 2012, 2013 and equipment demands and the Group C claims survive.

45. Deborah Roberts. Roberts executed a franchise agreement in November 2011. The franchise ceased operations in November 2014.

All claims remain.

46. Gradyne Rose and Faw-Rose Fitness, LLC. Faw-Rose Fitness, by and through Rose, executed a franchise in October 2010 for a location in the west area of Wilkes County, North Carolina. This franchise ceased operations in June 2011. Another franchise was executed in October 2010 for the east area of Wilkes County. This franchise closed in July 2014.

All Group A claims are time-barred. Group B and C claims arising from actions or omissions occurring between May 31, 2011, and the date each franchise closed survive.

47. Christine Salomon and Daily Kaizen Corp. Daily Kaizen, by and through Salomon, executed a franchise agreement in August 2009. The franchise is apparently still operation.

All Group A claims are dismissed as time-barred. The timely Group B and Group C claims survive.

48. Kim Sampson and KSG, LLC. Sampson executed a franchise agreement in December 2003 for a location in Glenville Township, New York. This agreement was renewed in August 2014 by KSG. The franchise ceased operations in November 2014. Sampson executed another franchise agreement in December 2003 for a Halfmoon, New York location. She renewed the agreement under KSG in April 2014. It also ceased operations in November 2014.

All Group A claims are dismissed. Group B and C claims arising from actions or omissions occurring between May 31, 2011, and the date each franchise closed survive.

49. Joy Samson and Jacqueline Telles executed a franchise agreement in June 2006. The agreement was renewed by Samson in May 2012 and by Samson and Telles in June 2013. The franchise is apparently still in operation.

All Group A claims are dismissed. All timely Group B and Group C claims survive.

50. Tracy Sinclair, Jerome Sinclair, and JTS Enterprise, LLC. JTS Enterprises, by and through the Sinclairs, executed a franchise agreement in May 2010. The franchise ceased operations in November 2014.

All Group A claims are dismissed. Group B and C claims arising from actions or omissions occurring between May 31, 2011, and the date the franchise closed survive.

51. Scott Singleton and Lisa Singleton. The Singletons executed a franchise agreement in August 2002 for a location in Hampstead, Maryland. This location ceased operations on October 1, 2011. Scott Singleton executed another franchise agreement in June 2003 for a location in Manchester, Maryland. This location ceased operations in June 2013.

The Group A claims for both locations are time-barred. Group B and C claims arising from actions or omissions occurring between May 31, 2011, and the date each franchise closed survive.

52. Deborah Spalvins. Spalvins executed a franchise agreement in October 2002. The franchise ceased operations in February 2012.

Her Group A claims are time-barred.  Group B and C claims arising from actions or omissions occurring between May 31, 2011, and the date the franchise closed survive.

53.  Stacy Vano.  Vano executed a franchise agreement in January 2002, renewed it in January 2012, and renewed it again in April 2014.  The franchise closed four months later.

Vano's Group A claims are time barred.  Her Group B and Group C claims survive.

54.  Rita Viskup and John Viskup.  The Viskups executed a franchise agreement in December 2009 for a location in Bluefield, West Virginia.  This franchise ceased operations in December 2014.  Also in December 2009, they executed a franchise agreement for a Princeton, West Virginia location.  This franchise closed in January 2014.

All Group A claims are time-barred.  Group B and C claims arising from actions or omissions occurring between May 31, 2011, and the date each franchise closed survive.

55.  Michelle Wicks.  Wicks executed a franchise agreement in September 2009.  The franchise closed in December 2012.

All Group A claims are time-barred.  Group B and C claims arising from actions or omissions occurring between May 31, 2011, and the date the franchise closed survive.

B.  Texas Statutory Claims.  Each of the foregoing fifty-five groups of Plaintiffs filed a count alleging a violation of the TBOA and a count alleging a violation of the DTPA.  Of those fifty-five groups, only seven groups continue with their statutory claims.  See note 4, supra.

Under the TBOA,

A seller may not:

(1) employ a representation, device, scheme, or artifice to deceive a purchaser;

(2) make an untrue statement of a material fact or omit to state a material fact in connection with the documents and information required to be provided to the secretary of state or purchaser;

(3) represent that the business opportunity provides or will provide income or earning potential unless the seller:

> (A) has documented data to substantiate the representation of income or earning potential; and

> (B) discloses the data to the purchaser when the representation is made; or

(4) make a claim or representation that is inconsistent with the information required to be disclosed by this chapter in:

> (A) advertising or other promotional material; or

> (B) an oral sales presentation, solicitation, or discussion between the seller and the purchaser.

Tex. Bus. & Com. Code § 51.301.  "The [TBOA] imposes mandatory disclosures and attempts to protect persons against false, misleading, or deceptive practices in the sale or lease of business opportunities," **Morrison v. Chilton Prof'l Auto., Inc.**, 984 F.Supp. 1018, 1020 (W.D. Tex. 1997), including franchise agreements, see **Camac v. Dontos**, 390 S.W.3d 398, 403 (Tex. Ct. App. 2012).  A business opportunity "means a sale or lease for an initial consideration of more than $500 of products, equipment, supplies, or services that will be used to begin a business . . . ."  Tex. Code Ann. § 51.002(4).  A violation of the TBOA "is a false, misleading, or deceptive act or practice under [the DTPA]."  Tex. Bus. & Com. Code § 15.302.  See also **Morrison**, 984 F.Supp. at 1020.

Actions brought under the TBOA and DTPA "must be commenced within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice. The period of limitation provided in this section may be extended for a period of 180 days if the plaintiff proves that failure timely to commence the action was caused by the defendant's knowingly engaging in conduct solely calculated to induce the plaintiff to refrain from or postpone the commencement of the action."  Tex. Bus. & Com. Code § 17.565.

Of the seven groups of Plaintiffs who continue to assert statutory claims, five groups do so on the grounds that they renewed their franchise agreements within the two-year statute of limitations.  The Counts at issue are Counts 8, 9, 125, 126, 131, 132, 146, 147, 158, and 159.  Defendants seek the dismissal of these Counts.[11]

Citing **Miller v. Keyser**, 90 S.W.3d 712, 716 (Tex. 2002), Defendants argue that the TBOA and DTPA are "designed to protect consumers – *i.e.*, people who are buying things" and are not meant to protect people who are renewing "ongoing, long-time contractual relationships."  (Defs. Reply at 12, ECF No. 17.)  The Texas Supreme Court held in *Miller* that "[t]he DTPA was enacted to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide consumers with a means to redress deceptive practices without the burden of proof and

---

[11]Defendants also argue that the statutory claims in Counts 20, 21, 104, and 105 should be dismissed because the franchise agreement provides that the action is to be brought in Texas. This argument is addressed below.

numerous defenses encountered in a common law fraud or breach of warranty suit." **Id.** (internal quotations and footnotes omitted). Because of this goal, a person could be held liable under the DTPA regardless of whether he knew that his complained-of representations were false and the consumer-plaintiff need not show intent on the defendant's part. **Id.** Defendants' reliance on *Miller* is unavailing.

Based on the record now before the Court, the renewal of a franchise agreement was arguably a business opportunity that falls within the purview of the TBOA and DTPA.

Defendants further argue that Plaintiffs have not cited any authority for the protections of the TBOA and DTPA being extended to the renewal of business relationships. It is, however, Defendants who are moving to dismiss and who carry the burden of showing that the protections do not apply.

Forum Selection Clause. As noted above, the Agreement provides that the United States District Court for the Western District of Texas or the judicial district courts of McLeannan County, Texas, "will be the venue and exclusive proper forum in which to adjudicate any case or controversy arising either, directly or indirectly, under or in connection with this Agreement . . . ." (Mot. Ex. A at 41.) Defendants argue that this clause requires that the any remaining claims or plaintiffs be dismissed or, the very least, be transferred to the Western District of Texas.

The Supreme Court recently addressed "the procedure that is available for a defendant in a civil case who seeks to enforce a forum-selection clause." **Atlantic Marine Const. Co. v. U.S. Dist. Court for the Western Dist. of Tex.**, 134 S.Ct. 568, 575 (2013). The court

rejected the argument that such a clause may be enforced by a motion to dismiss. **Id.** Instead, "a forum-selection clause may be enforced by a motion to transfer under [28 U.S.C.] § 1404(a)."[12] **Id.** In so holding, the court noted that "[t]he structure of the federal venue provisions confirms that they alone define whether venue exists in a given forum. In particular, the venue statutes reflect Congress' intent that venue should always lie in *some* federal court whenever federal courts have personal jurisdiction over the defendant." **Id.** 578.

Defendants removed this mass action from Missouri state court on the grounds that this Court has jurisdiction over it and is the appropriate venue. (Defs.' Not. at 4-5, 7, ECF No. 1.) The question then is whether the case should be transferred pursuant to the forum selection clause.[13]

_____

[12]Section 1404(a) reads that, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

[13]Defendants note that the Supreme Court did not reach an argument in *Atlantic Marine* that a contract action filed in contravention of a forum selection clause should be dismissed pursuant to Rule 12(b)(6). 134 S.Ct. at 580. The court did not reach it because the motion at issue had been filed pursuant to Rule 12(b)(3) (dismissal for lack of jurisdiction) and not Rule 12(b)(6). The three cases – all decided before *Atlantic Marine* – cited by Defendants in support of their argument that dismissal is proper are unavailing. In one, **M.B. Rests., Inc. v. CKE Rests., Inc.**, 183 F.3d 759 (8th Cir. 1999), there is no mention of the Rule pursuant to which the motion to dismiss for improper venue was filed and in another, **Carnival Cruise Lines, Inc. v. Shute**, 499 U.S. (1991), the question was reached on summary judgment. In the third, **Thomas v. Auto. Techs. Inc.**, 2012 WL 3763750 (E.D. Mo. Aug. 29, 2012), the court noted "that whether forum selection clauses are properly addressed under Fed.R.Civ.P. 12(b)(3) or (b)(6) is an open question." **Id.** at *1. Further noting that it had previously dealt with forum selection causes under 12(b)(3) for improper venue, the court continued with that strategy and dismissed the case without prejudice. **Id.** at *3. The decision of the Supreme Court the next year in *Atlantic Marine* discourages such an approach.

Plaintiffs argue that the case should not be transferred because their allegations of fraudulent conduct allow the Court not to enforce the forum selection clause.

"A 'forum-selection clause in a contract is not enforceable if the *inclusion of that clause in the contract* was the product of fraud or coercion.'" **Marano Enters. of Kansas v. Z-Teca Rests., L.P.**, 254 F.3d 753, 757 (8th Cir. 2001) (quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 n. 14 (1974)). A "general allegation . . . that [a plaintiff] was induced by fraud to enter into the franchise . . . agreements is insufficient to raise an issue that the forum-selection clauses within those agreements may be unenforceable because of fraud." **Id.** It is only a general allegation that Plaintiffs present to resist transfer.

The parties agreed to a forum selection clause in the Agreement that required any dispute arising under that Agreement be heard in the Western District of Texas or the courts of McLeannan County, Texas. With only general allegations of fraud and absent a showing of any other extraordinary circumstance, the case will be transferred to the Western District of Texas. See **Atlantic Marine**, 134 S.Ct. at 581 (transfer pursuant to aa valid mandatory forum selection clause may be avoided only under "exceptional circumstances unrelated to the convenience of the parties").

## Conclusion

This mass action involves 111 Plaintiffs with claims of breach of contract and statutory violations relating to 83 franchises. All claims of some Plaintiffs are dismissed as time-barred. Some claims, but not all claims, of other Plaintiffs are dismissed as time-barred. These are claims relating to a specific franchise.

The Plaintiffs who are dismissed as parties are:  Dolores Cooney; Christine Beidel; Natalie Cooper-Berthe; Amy Draper; Susan Espy; Glenn Espy; Susan Fogg; Susan O'Donnell; and Garrison Payne.

The claims of the remaining Plaintiffs are charted below.  All Group B and Group C claims prior to 2011 are dismissed as time-barred.  If "survive" is listed on the chart, it refers to only those claims relating to the period between June 1, 2011, and either the date the franchise closed, if it did, or to date.

| Plaintiffs/franchise | Group A claims | Group B claims | Group C claims |
|---|---|---|---|
| Armstrong | survive | survive | survive |
| Barcus | time-barred | survive | survive |
| Women Fitness:  1st franchise | time-barred |  survive | survive |
| 2nd franchise | time-barred | survive | survive |
| 3rd franchise | time-barred | time-barred | time-barred |
| 4th franchise | time-barred | survive | survive |
| Berquist:        1st franchise | time-barred | survive | survive |
| 2nd franchise | time-barred | survive | survive |
| Birch | time-barred | survive | survive |
| Blackmore:        1st franchise | time-barred | survive | survive |
| 2nd franchise (One Candle) | survive | survive | survive |
| Blanton franchise | survive | survive | survive |
| Chatelain:        1st franchise | time-barred | survive | survive |

| | | | |
|---|---|---|---|
| 2nd franchise | time-barred | survive | survive |
| Clary | survive | survive | survive |
| Collier: 1st franchise | time-barred | time-barred | time-barred |
| 2nd franchise | time-barred | survive | survive |
| 3rd franchise | time-barred | survive | survive |
| Collins | time-barred | survive | survive |
| Z. Collins | survive | survive | survive |
| Cooke | time-barred | survive | survive |
| Be Strong | survive | survive | survive |
| Body Design: 1st franchise | time-barred | survive | survive |
| 2nd franchise | time-barred | time-barred | time-barred |
| 3rd franchise | time-barred | time-barred | time-barred |
| Lee Lynn: 1st franchise | survive | survive | survive |
| 2nd franchise | survive | survive | survive |
| AB Draper | time-barred | survive | survive |
| Edmiston | time-barred | survive | survive |
| Edwards | survive | survive | survive |
| Gypse | time-barred | survive | survive |
| Executive | time-barred | survive | survive |
| Rivah Fit | time-barred | survive | survive |
| K&M | survive | survive | survive |
| Deb | survive | survive | survive |
| Frost: 1st franchise | time-barred | time-barred | time-barred |
| 2nd franchise | time-barred | survive | survive |
| 3rd franchise | time-barred | survive | survive |
| 4th franchise | time-barred | time-barred | time-barred |
| 5th franchise | survive | survive | survive |

| | | | | |
|---|---|---|---|---|
| Gasson: | 1st franchise | time-barred | survive | survive |
| | 2nd franchise | time-barred | survive | survive |
| | 3rd franchise | time-barred | survive | survive |
| | 4th franchise | time-barred | time-barred | time-barred |
| Guzdial | | time-barred | survive | survive |
| Haselhuhn | | survive | survive | survive |
| Surfside | | time-barred | survive | survive |
| Hollenbeck | | survive as to expenses claim | survive | survive |
| Gilpin: | 1st franchise | survive | survive | survive |
| | 2nd franchise | survive | survive | survive |
| Jones | | survive | survive | survive |
| Kamp | | survive | survive | survive |
| Kieffer | | time-barred | survive | survive |
| B'KLYN | | time-barred | survive | survive |
| Loeffler | | survive | survive | survive |
| Matusin: | 1st franchise | time-barred | survive | survive |
| | 2nd franchise | time-barred | survive | survive |
| McCrary | | time-barred | survive | survive |
| McDonald | | survive | survive | survive |
| SEO: | 1st franchise | time-barred | time-barred | time-barred |
| | 2nd franchise | time-barred | survive | survive |
| Ogle | | survive | survive | survive |
| Petrinovich | | time-barred | survive | survive |
| Pieratt | | time-barred | survive | survive |
| Price | | survive | survive | survive |

| | | | | |
|---|---|---|---|---|
| Keeping You: | 1st franchise | time-barred | survive | survive |
| | 2nd franchise | time-barred | survive | survive |
| | 3rd franchise | time-barred | survive | survive |
| Roberts | | survive | survive | survive |
| Rose: | 1st franchise | time-barred | survive | survive |
| | 2nd franchise | time-barred | survive | survive |
| Salomon | | time-barred | survive | survive |
| Sampson: | 1st franchise | time-barred | survive | survive |
| | 2nd franchise | time-barred | survive | survive |
| Samson | | time-barred | survive | survive |
| Sinclair | | time-barred | survive | survive |
| Singleton: | 1st franchise | time-barred | survive | survive |
| | 2nd franchise | time-barred | survive | survive |
| Spalvins | | time-barred | survive | survive |
| Vano | | time-barred | survive | survive |
| Viskup: | 1st franchise | time-barred | survive | survive |
| | 2nd franchise | time-barred | survive | survive |
| Wicks | | time-barred | survive | survive |

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiffs' Notice of Partial Dismissal [Doc. 14] is

**GRANTED**.  Counts 2, 3, 5, 6, 11, 12, 14, 15, 17, 18, 23, 24, 26, 27, 29, 30, 32, 33, 35, 36, 38, 39, 41, 42, 44, 45, 47, 48, 50, 51, 53, 54, 56, 57, 59, 60, 62, 63, 65, 66, 68, 69, 71, 72, 74, 75, 77, 78, 80, 81, 83, 84, 86, 87, 89, 90, 92, 93, 95, 96, 98, 99, 101, 102, 107, 108, 110, 111, 113, 114, 116, 117, 119, 120, 122, 123, 129, 134, 135, 137, 138, 140, 141, 143, 144, 149, 150, 152, 153, 155, 156, 161, 162, 164, and 165 are DISMISSED without prejudice.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss is **GRANTED** in part and **DENIED** in part as set forth above.

**IT IS FURTHER ORDERED** that the claims of Dolores Cooney; Christine Beidel; Natalie Cooper-Berthe; Amy Draper; Susan Espy; Glenn Espy; Susan Fogg; Susan O'Donnell; and Garrison Payne are DISMISSED.

**IT IS FINALLY ORDERED** that this case is TRANSFERRED to the United States District Court for the Western District of Texas.

A separate Order of Transfer shall accompany this Memorandum and Order.


/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this  15th  day of October, 2015.